Our last case of the day is Philippe Calderon v. Six Rent A Car That's case number 20-10989 Mr. Emery, are you ready to proceed? I am, Your Honor. Thank you. You may go ahead. Good morning, Your Honors, and Counsel Gilbride. May it please the Court, my name is Patrick Emery from Fisher-Broyles. I'm here on behalf of the appellant, Six Rent A Car, LLC. I'd like to reserve three minutes of time for my rebuttal, if I may. The issue before the Court is whether Six may compel arbitration of the claims presented by Mr. Marin because he agreed to arbitrate those claims when he entered into the terms of use when he booked his rental from Six through the Orbit website. And the answer is yes, because the arbitration provision specifically covers these claims. Applying the strong presumption of arbitrability, as this Court must, in construing the plain text of the agreement in a holistic fashion, you look at the terms and the arbitration provision provides that it broadly covers all claims relating in any way to his reservation, which is the service Orbitz provides, or relating in any way to the services or products provided pursuant to that reservation. Now, Mr. Marin's claims Before we get too deep into the interpretive questions in this case, which I think are very hard, you mentioned at the outset the strong presumption of arbitrability. Do you think federal law applies here? Does the Moses-Cohn standard apply? And the reason I ask is that Moses-Cohn uses Section 2 of the FAA to get to that strong presumption of arbitrability. And Section 2 only applies to certain contracts. And it only applies, at least as I'm reading Section 2, to controversies that, quote, arise out of the contract. And does this controversy arise out of the contract? I mean, as I understand the way that courts have construed this arising under thing, it'll require reference to the terms of this contract. The underlying cause of action would require reference to the terms of this contract. And the reason I ask all of this is that if the interpretive arguments are sort of on a razor's edge, then a Moses-Cohn-type presumption is obviously going to help you. And so I think it's important for us to understand whether a Moses-Cohn-type presumption here applies. Thank you, Your Honor. I believe there are two separate issues there. The first is, does the Moses-Cohn standard apply? And I believe that it does because we have an agreement to arbitrate. The question of whether these claims are arbitrable is defined by the contract language itself, not necessarily by the arise out of or relate to standard, because Section 1 of the Federal Arbitration Act provides that any issue referable to arbitration by an agreement in writing should be arbitrated. And I think that regardless of whether or not you apply the presumption of arbitrability, the plain language is clear here that these claims were meant to be arbitrated. I agree that it's a much clearer case and that you don't have to look to anything else to interpret the agreement. If there's if there's a presumption that gets applied. But frankly, I don't think you need to get there because the language is so plain and is identified to cover claims against suppliers like Sixth, as well as claims, including claims that either concern in any way the reservation as well as the services and products provided. But I will also note your question about arising out of and relating to the reservation agreement, which I say is not not the standard here. I think we do still meet that standard because in this situation, the way that Mr. Marin has pled his claims, he has alleged breach of contract and FIDEPA claims and the Collection Practices Act claims against Sixth, alleging that he was charged fees that he was never told about because he was not given the rental jacket or notified about it before he got to the rental counter. In support of that, he alleges that at no point, including during the reservation process, which he says created a contract between him and Sixth for this rental, that he was not told about those terms. But in order to adjudicate those issues, the fact finder, which we think should be the arbitrator, is going to need to go and look at the reservation terms, including the supplier rules and restrictions that clearly notified Mr. Marin that there would be a rental jacket that would cover his liability for damage to the vehicle, as well as the terms of use, which also notified him that there would be additional terms provided by the supplier. So turning to. Can I ask you just a question about the plainness of the the agreement, plainness of the language of the agreement? I guess I'll confess. I think this is really, really, really hard. I don't think there is a great answer here. There might be better and worse answers, but I don't think either of you can sort of convincingly to me say you'd have to. This is a no brainer for me. I think there are the contract itself is pretty jacked up. So I guess I want to test you with a couple of provisions of the larger contract and just sort of see what your response is. What about the provision of the contract that requires any claim, any capital C claim to be referred to Orbitz's legal department? Why would Orbitz's legal department want to become the clearinghouse for all claims against any product or service supplier? That just seems totally bizarre to me. And if that is Orbitz's responsibility, then they had better lawyer up. I think that's a great question that you raise, your honor, and we addressed in our brief, and I'll quickly summarize it here. And that is that Orbitz and drafting the contract has an interest in protecting itself as well as protecting its supplier partners, because the way that these contracts work is that Orbitz doesn't get paid anything by the by the user. Orbitz is paid by its third party travel suppliers. And so you see that there are a number of enumerated protections within the terms of use, as well as in the supplier rules and restrictions. Limitations on liability, et cetera, that protect the suppliers. So as part of that, Orbitz has taken on this obligation. And I don't think it's going to open the floodgates because, frankly, there probably aren't that many disputes of this kind, or at least I'm not aware of that many. Orbitz has agreed to take on sort of this mediating role because it is an interest in ensuring that disputes between its users and the supplier are resolved and satisfied. Now, if Orbitz doesn't want to do that, it can revise the terms of its terms of use, which it has done on multiple occasions. Let me ask you a question in this regard. So you would say. That this arbitration agreement in the Orbitz TOU would allow the following frame to fall within its orbit. Suppose I rent a car. I use Orbitz to provide the vehicle by which I rent a car from Sisk. And I then take the car out. And the brakes fail. And I smash the car into a tree and I'm grievously injured. You would say a claim. I have agreed to that there's an agreement to arbitrate that that claim. I think it's going to depend on the way that the claim is pled. But if it just looking at the plain language of the agreement, they haven't carved out claims. Yes. That I suppose I would do what all lawyers do pleaded in contract and in tort. But you gave me a car with bad brakes and I was grievously injured because of that. Orbitz had nothing in the world to do with all of these events that transpired after I got my contract from the rental agency. I rented the car and drove it and wound up in the hospital. Do you suppose that Orbitz meant by this agreement to include within its scope that claim against six for renting a car with bad brakes that caused me to leave this injury? Yes, I do. And the reason why is specifically in the words of this contract that would suggest that's what these parties meant by these terms. Yes, because it used it used broad language saying any and all claims relating to any and all services and products provided. And if you go down later in the limitations of liabilities, Orbitz has protected itself from negligence claims against the suppliers. In addition, if Orbitz had wanted to exclude those types of claims, it's very common in this industry for either the suppliers and their own contracts or for the OTAs, the online travel agencies to exclude those types of claims. But here, the only carve out is for small claims, which doesn't apply. Now, I would agree with you. Can I ask you another hypothetical that may be even more bizarre? Assume that a consumer goes through Orbitz to get a sixth car. And assume also that the Westin hotel chain has used Orbitz in the past, but that this consumer, although renting the car through or from six through Orbitz books his hotel room at the Westin on his own in person at the desk. Is it your position that let's say a race discrimination claim against Westin has to be arbitrated pursuant to the Orbitz agreement? And if not, why not? No, because it wasn't booked through the site. And that's the important distinction between the services where there's an exception. So if you look at the definition of services, it excludes contracts that do not arise through exclude services that do not come through the reservation itself. If you click and go to a third party website, say if you were to click on an ad for Westin, and then went and saw an ad on their website and agreed to the reservation there or just were a walk up, it wouldn't apply. Or for example, I mean, so that means that it may not fit within the prong of the definition, or the, you know, a claim relating to the capital S services, but it doesn't explain to why the claim doesn't fit within any small as services or products provided. I mean, Westin is a travel supplier. They give hotel rooms. Why isn't that a service or product provided the hotel reservation. Why isn't that a service or product provided by Westin, who in the past, although not in conjunction with this reservation has dealt with Orbitz. To arbitrate that claim, because it wasn't provided pursuant to the reservation, where is that limitation in the, in the contract, I guess that's what I'm trying to figure out. It seems to me that you're, you're saying the contract is playing. It says any services or product provided by anybody. And I'm asking why not Westin, because, because in that factual scenario Westin is not the travel supplier, it's not a company offering the product or service through the website. And it's not the supplier, it may be another circumstances, but there's but there's no linkage to the reservation itself. So where you see the language, any services or products provided throughout the agreement. It's referring to the services or products that were actually booked by the individual through the website. For example, in the in the actual checkout page itself. It refers to sixth as the travel provider travel supplier in this scenario. And so, I'm not, I'm not arguing that for us to win, everybody, all comers need to be able to arbitrate under these under these claims, we're simply arguing that on these I think the third party beneficiary issue is, is open and shut on this. It says in the express language of the arbitration agreement that suppliers like six or third party beneficiaries, and therefore we respectfully request that the court reverse and remain with instructions to compel bilateral arbitration. Let me go back just one second if I could to this exclusion or exception and I want you to tell me how I should interpret the term services marks content and travel services, do not include the sites applications marks content products or services that are provided by third parties, and that are available through a link from the services. What does that mean. That language means that if you're using the website, and you see an ad on the side of the website. So you see an ad that sixth is placed, and you click on the sixth link, and you go outside of the orbits domain to the sixth website, and you decide to book your rental through the sixth website, the orbits terms of use no longer apply to that, even though I got to that hyperlink by starting first with going down to orbits itself. Correct, but you haven't booked your reservation through orbits so you're not agreeing to the terms of use that orbits has. And if you look at paragraph 15 of the terms of use, it says this website may contain hyperlinks to websites operated by parties, other than orbits such hyperlinks are for your reference only, we don't control them. It's up to you to decide what you do with those third party websites. So this this hypothetical about the Westin is designed to be foreclosed by this exclusion under services and under this third party exclusion, really what we're focused on here is how did how, why these claims relate to the reservation that was made, and the service and products that was provided pursuant to the reservation. So we're pretty much anything that happens to me. After I rent the car from six. That was caused by didn't emanate from anything orbits did that was caused by the rental agency. I'm still bound to all the trade that that is under the any services and products provided prong but we also succeed. Yes, yes. Theoretically could be. Thank you, Mr. Murray, you're answering the court's question so you have reserved your full three minutes for a bottle is Gilbride. Thank you, Your Honor, may it please the court, Carla Gilbride on behalf of the plaintiff Mr Moran. Six must clear three separate hurdles before it can enforce the arbitration provision in orbits is terms of use. First, it must convince this court to ignore the language of its own contract that it formed at the rental counter with Mr Moran, which does not include an arbitration clause, and which purports to extinguish any prior obligations between the parties regarding the rental. Second, it must convince the court that this dispute, involving the fees that six charged after Mr Moran rented and returned his vehicle fall under the definition of claims with a capital C in urban orbits is terms of use, where that term claims is entirely focused on orbits is reservation process. And third, even if it succeeds in clearing those two hurdles. Six still has the burden of proving under Florida law that it is entitled to enforce orbits is agreement, either under equitable estoppel or as a third party beneficiary, and it simply cannot meet that burden. First, returning to the question of the contract formed at the rental counter. It contains all of the essential terms regarding the rental, the price the duration the conditions, and if there is any ambiguity as to whether or not that in that face page agreement was fully integrated, then this court may look only for that purpose to extrinsic evidence, such as the terms in the rental jacket. And if you look at the rental jacket it specifically says this agreement constitutes the entire agreement between you and us all prior representations and agreements between you and us regarding this rental are void. All of the claims in this case, relate to conduct that took place after Mr. Mr Moran rented the car, and after he returned the car, and they simply have nothing to do with the orbits reservation process and so to the extent that there were any obligations between six and Mr Moran created by the orbits terms of use which we can set intend there were not those claims or obligations were extinguished by the face page, which is the only relevant agreement here it is the agreement, governing the the transaction of the rental and it is the only agreement relevant to the claims and the disputes. In this case, can I ask you a question I guess about part two of your argument about the, the interpretation of the, the orbits agreement. So I was kind of beating Mr Emory up a little bit. I'm going to now sort of turn about as fair play I mean I think that you've got some tough provisions to explain as well. One is just the interaction between the claims sort of prong will say it will call it in the entities against whom claims can be brought if claims is defined as you say to include only orbits related conduct, and isn't there some dissonance in saying that, that you agree to arbitrate arbitrate your claims against dot dot dot travel suppliers, and any companies offering products and services through us. I mean like what what does that even mean for you to have an orbits related claim that you allege against a third party. There is no dissonance, Your Honor, because there are certainly many circumstances in which a dispute could arise that is related to the orbits reservation process, but that a party could want to bring that claim against both orbits and the travel provider or perhaps against only the travel provider. Let's say you go to the airport, and the, the airline doesn't have a copy of your reservation that doesn't have a ticket for you, but you booked your reservation through orbits and now you can't get on the plane. So you have a claim it's related to the reservation why doesn't the airline have that reservation that you booked through orbits you might bring that claim against orbits alone. You might bring that claim against both orbits and the airline or you might bring that claim against the airline alone, but in either case, it involves the reservation made through orbits. And the reason that we know I mean there was a lot of discussion between Judge Newsome and Mr. Emery about what does the term. Any services or products provided me within the definition of claims, and in six brief they argue that that term is not ambiguous and so cannons of statutory or contract construction, like NASA tour associates don't apply. Of course the term is ambiguous because any services or products provided just that unadorned phrase without any context would mean any services or products provided by anyone at any time in any context. And of course it can't possibly mean that and so even in describing what that language means to this court, Mr. Emery is adding additional words he's saying any services or products provided pursuant to the reservation. Those words don't appear in the contract. And when defining an ambiguous term like this. The most plausible interpretation the interpretation that avoids the sort of absurd results that Judge Newsome was describing is by looking at the surrounding phrases in that definition and all of the other surrounding phrases and the definition of the term claims. And then the capitalized term services which again refers to our website mobile applications again everything that is provided by orbits to adjust I guess what what Mr. Emery might say though is that if if any services or products provided, sort of, if you add by orbits, then you're just sort of duplicating the first sort of item in that serial list, the services, the capital S services which are defined to mean products and services provided by orbits. So like what independent meaning then anymore does any services or products provided half. That's a good question, Your Honor, and I would submit that orbits was was perhaps building in some redundancy here, because not everyone reads closely every term of every contract including the definitions and even though it says it's capitalized terms you know have a defined meaning and you cross reference the definition to figure out what those terms mean realizing that not every person browsing the internet is going to read with that degree of care orbits then reiterated within the definition of claim some of the key disputes that would apply so that this is not the only place where there's redundancy. For example, of course, the problem here is one orbits drafted this to the language, it purported to use is awfully hard if not open ended any company offering a product or service suggests that they meant to go beyond any service offered by orbits doesn't it. If I understand the question. I think your honor is referring to the fact that, you know, there's again this reference later on in the paragraph to third parties travel suppliers. Okay, but here I'm talking about the language in the sentence that reads. This includes any claims capital C, you assert against us, our subsidiaries, and now you've moved on after that to a different character or a specie of party travel suppliers. They're not a travel supplier, or any company offering products or services through us. What did they mean by any companies offering products or services. I think this goes to me the problem is, if we take your interpretation you've read those words out of the lines. No, Your Honor, because again, the any companies providing products or services through us was the situation we were describing before the person gets to the airport and the airline doesn't have their reservation. It still has to be a claim with a capital C for the rest of that sentence to apply it, you know that sentence that you just read out Judge Marcus starts with this includes all claims with a capital C and so if it's not a capital C. I'm sorry, I'm sorry. Is there a definition of claims anywhere in this agreement. Yes, Your Honor, what we've just been discussing the language that begins. You agree to give us an opportunity to resolve any disputes, this is I'm now saying what's the definition of claims, any disputes or claims relating in any way to the services with a capital S. Any dealings with our customer service agents, any services or products provided, comma, any representations made by us, or our privacy policy, and that language that I just read is defined as claims. I'm sorry, I didn't mean to cut you off but is there any significance to be attached to the fact that language you read from the preceding paragraph, as does not capitalize the C in claims. And yet when you get to the next paragraph, they capitalize claims. Does that suggest that talking about the same beast or something different. Well, I believe that once claims is defined with a capital C, which it is in that sentence that I just read to you then when the capital C is used again, which it is in the sentence you read this includes any claims you assert against us our subsidiaries travel suppliers by using the capital C in that second paragraph, what orbits intended was to refer back to the definition of claims, above, and that definition of claims above as best construed admitting at least, you know plaintiffs admitted that there was an ambiguous phrase in there, which is any products or services provided the best interpretation of that phrase, and the best interpretation of claims as a whole holistically, is that it relates to the orbits reservation process. The, the NASA tour associates canon is one reason for that. Another reason is the avoidance of absurd results and some of those absurd results were discussed during right before you go, you go on, let me make sure I understand how this works. So, in looking at whether Mr Moran's claims relate in any way to orbit services. My understanding is that Mr Moran had to acknowledge that he had read and accepted six rules and restrictions which are full of references to the rental jacket. Am I right in that understanding. Well, this is where we get into another question of burden of proof, Your Honor, because the rules and restrictions are not in this record in any competent way. There is a reference to rules and restrictions but we don't know what those rules and restrictions were at the time that Mr Moran entered into his reservation with orbits, we don't have any admissible authenticated evidence about the rules and restrictions. The only thing we have in the reply brief prevent presented below to the district court is from the Dupler case, a declaration from an orbits representative about orbits terms of use, but it has nothing to do with six. So the six rules and restrictions to the extent they were that they were included we don't have any evidence as to what they said. Whether over time. And what they said, I mean is it true that because it's not on the record we don't have any idea what it says, or is there other other evidence in the record from which we can tell that we submit that there is no evidence in the record that is competent that either this quarter the district court could rely upon to determine that, because it is six burden you proffer evidence and they didn't do so, either in their opening brief or they just had some screenshots that were on authenticated, and then in their Would that be a situation where the claims would directly relate to the reservation service. If through the reservation service you had to agree to rules and restrictions or terms from six. Again, they would our position is they would not relate to this dispute, because this dispute arises from conduct that occurred after Mr Marin rented the car from six six presented him with a new agreement at the rental counter which purported to be the entire agreement between the parties extinguishing any prior obligations, then after he signed that agreement fees were imposed upon him that were not disclosed to him by six, that's the gravamen of the claims here, and there's no contractual nexus under Florida law between those claims, and anything in the orbits terms of use that he agreed to when he reserved made his reservation through orbits. Let me ask you, Judge Marcus's question where he asked you, what would companies offering services through orbits be if not rental car companies like six. Can you give me an example. Companies offering services might might include six but they still have to, you know, first of all, two things. First of all, they still have to fall under the definition of claims or the dispute still has to fall under the definition of claims, which it does not here. And second of all, under the third party beneficiary standard under Florida law. It's six as the proponent that has to show it, there was clear and mutual intent for the third party beneficiary to be a direct and primary beneficiary that's a high standard, and we would argue that that that services, you know provided through a third party doesn't meet that standard it's not a defined term under the agreement, you know that there's a defined term suppliers, and those words do not appear in that defined term to again And to return to the definition of claims there are a few ways that if orbits wanted these disputes, any disputes with suppliers to be arbitrable, it could have put the terms, capital S suppliers within the definition of capital C claims, it could have put travel services with capitalized T capital S under the definition of claims it didn't do any of those things. And finally, just to return to point that Judge Newsome made about what is arising under mean under section two of the FAA. There is a concurrence by judges Scanlon in a Ninth Circuit case against direct TV decided last year that deals with that precise issue of what to the, to the orbits terms of use the presumption in favor of arbitration does not apply under section two, nor do the terms of use apply, and therefore this claim falls outside of the scope orbits cannot six cannot enforce orbits as terms of use, because it does not fall within the claims because it is not a third party beneficiary, and because by the terms of its own agreement, it extinguished those claims when it entered into a new agreement with Mr Marin at the reservation counter at the time of rent. Let me ask you a question you argue three separate things here one of which was that they're not third party beneficiaries. What are we to make up the language in the operative paragraph that you quoted from after it says this includes any claims you assert against us our subsidiaries travel suppliers or any companies offering products or services through us including suppliers which are beneficiaries of this arbitration agreement. What did the parties mean when they put in the phrase, which are beneficiaries of this arbitration agreement. What was intended there is that when there is a claim that is covered under the definition of claims and relates to orbits reservation services but it can be made against a supplier or a third party that provide services through orbits like the person at the But that's not the circumstance that we have here. There was no dispute over whether the reservation was there when when Mr Marin got to the counter he rented the car with no problem. All of his disputes arose with six after that fact because of additional fees that six impose outside the terms of its own agreement. So if the dispute arose out of the reservation itself. What six be a third party beneficiary. If the dispute arose out of the reservation and fell within the definition of claims. That's just a classic example that you you gave. I'm going to Los Angeles I rent a car I use orbit. I get to to six, and I'm going to go there for the July 4 weekend I fly into la x I go up to the queue to get my car six says thank you very much. We don't have a car for you. We're not honoring anything orbits day. If I decide to sue six, as well as orbits can six enforce an arbitration agreement and take me out of out of a district court and force me into an arbitrable panel. As your honor has presented the hypothetical yes I believe that six would be able to if the claim the dispute falls under the definition of claims, and it's able to meet the test under Florida law of being a third party beneficiary that they would be able to avail of that hypothetical I gave you six would be a third party beneficiary would it not under Florida law. Yes, it would be a, it would be a third party beneficiary at the hesitation is whether or not it's the dispute would fall under the definition of claims but as your hypothetical is laid out I believe that it would your honor. Thank you. Mr Murray rebuttal. Thank you, your honors, it sounds to me like the real dispute here surrounds the question of the definition of claims. I'm going to turn to that right now. The any services or products provided is not capitalized for a reason and it's the reason that Judge Marcus pointed out because the definition of arbitrable claims also includes claims asserted against travel suppliers like six which I believe has conceded travel services are just one of the many services available. You can book shows admission tickets meal discounts, and it's notable that orbits doesn't provide any products, it would be absurd for the language, any services or products provided to relate to orbits when orbits only provides reservations. Now if you look at the way that the language, any products or services is used throughout the entire agreement. There are distinctions including in the opening paragraph, differentiating between the services and the services and products that can be obtained through the website. For example, it says, read these terms carefully before using or obtaining any content products or services through our websites, and then it goes on to say, because there's an arbitration agreement here. In other words, if you use one of the services that you get through this contract through the reservation, you are going to be required to arbitrate that. And as far as the interpretative language goes, I would, I would point out that, you know, there are a lot of policy arguments being made here by by the Apple Ian, and while they may have some merit they're not really relevant because there's nothing absurd about requiring Mr Marin to adjudicate his commercial claims, particularly when he has alleged that he was not notified of the terms concerning the fees and that he was deceived in the reservation process itself. Now, looking, looking at the, this possessive language that's in there. I think it's really not about statutory, it's really not about Kansas construction it's more about elementary school knowledge, you know I'm thinking of Sesame Street, you know, one of these things is not like the other. And the differences. There's no possessive language there and there's no possessive language there, because the any services or products provided was written to cover and protect the third party suppliers who are providing the services through orbits orbits orbits only provides reservations to individuals. And so, if you look at the way that the contract is drafted. It says, any claims relating in any way to the services, which throughout the agreement, always refers to orbit, or any services or products provided which throughout the agreement, always refers to the third parties, especially in paragraphs five and 13. I have an example of that here, where it says the carriers hotels and other suppliers providing travel or other services through this website are independent contractors. So when you read the contract as a whole holistically as the court must, and under the presumption of arbitrability. It is clear that this contract, whether it's good or not, whether the court wishes written differently or not, it doesn't matter. It does cover his claims as pled, and they must be arbitrated. Thank you very much. Thank you. Court will now be adjourned until 9am tomorrow morning.